Matthew J. Gonsalves (SBN: 95147)
**LAW OFFICES OF MATTHEW J. GONSALVES**
438 Estudillo Avenue
San Leandro, CA 94577
Telephone: (510) 351-5102
Facsimile: (510) 351-6311

Attorney For Defendant,
NORMA GORDOA, as Trustee of the Karine Manokian Trust

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>PLAINTIFF,<br><br>V.<br><br>KARINE MANOOKIAN REVOCABLE TRUST, ET AL.<br><br>DEFENDANTS. | Case No. 3:15-CV-02113 CRB<br><br>**STIPULATED SETTLEMENT AGREEMENT AND [PROPOSED] ORDER** |

This Settlement Agreement and Mutual General Release (hereinafter "Agreement") is entered into by and between **Defendants** KARINE MANOOKIAN REVOCABLE TRUST *(hereinafter, the "Trust")*, naming Norma Gordoa, as trustee (hereinafter "Trustee") and GAGIK MANOOKIAN, Individually and in his capacity as parent and Natural Guardian of E.S.M., a Minor (hereinafter "Manookian") (Manookian and the Trustee referred to hereinafter as "the Parties"). The purpose of this Agreement is to fully and finally settle and resolve all claims between the Parties *related to the payment of insurance proceeds by Plaintiff Sun Life Assurance Company of Canada (hereinafter "Plaintiff") on the death of Karine Manookian, hereinafter, the "Decedent"*.

**CASE BACKGROUND**

1. WHEREAS, on or about February 23, 2012, Decedent, thorough her employer, purchased a total of $300,000 ($20,000 basic and $280,000 optional) in life insurance through Plaintiff.

2. The Decedent named her husband, Manookian individually, as a 30% beneficiary of the policy proceeds and E.S.M., her daughter, as a 70% beneficiary of the policy.

3. In the fall of 2014, Decedent contacted counsel and created the Trust.

4. The first beneficiary designation of 2012 was changed on October 24, 2014 to name the Trust as the sole beneficiary.

5. WHEREAS, a complaint in interpleader was filed *in this Court* by Sun Life and the case was assigned to District Judge Charles R. Breyer;

6. WHEREAS, Sun Life has previously deposited the sum of $301,656.71 with the Clerk of this Court for distribution in accordance with the judgment made by the Court in the above-entitled action;

7. WHEREAS Sun Life was dismissed from this action with prejudice, the parties having resolved and settled all issues involving Sun Life;

8. WHEREAS, the parties, through their authorized representatives, and without any admission or final adjudication of the issues of fact or law with respect to Manookian's claims have reached a settlement that they consider to be a just, fair, adequate, and equitable resolution of the disputes set forth *by* Manookian;

9. WHEREAS, the parties agree that settlement of this action in this matter is in the Parties' best interests and is an appropriate way to resolve the dispute between them;

**NOW, THEREFORE, IT IS STIPULATED BY AND BETWEEN THE PARTIES AS FOLLOWS:**

2

10. In consideration of the foregoing *promises* (which are incorporated and made part of this Agreement by this reference) and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereto, intending to be legally bound, agree as follows:

11. The Clerk of the above-entitled Court is hereby ordered and directed to release the previously deposited sum by Sun Life of $301,656.71, *plus any accruals on that amount* to the Trustee *to be deposited into the Trust.*

12. The Trustee, is to deposit the remaining sum of approximately $26,933 in the GoFundMe account into the Trust for the benefit of E.S.M., a Minor.

13. The Trustee is to pay attorney Matthew J. Gonsalves for all future *and outstanding fees for services provided in December, 2015, and January 2016,* up to a maximum amount of $5,431.00..

14. The Trustee is to pay Manookian the sum of $50,000 from the Trust funds.

15. The Trustee is to place all remaining Trust funds into a *529 investment* college fund. If a 529 investment college fund becomes unavailable, all remaining Trust funds are to be placed in a Federally Insured Blocked Accountfor the benefit of E.S.M., a Minor.

16. Manookian is to pay the descendant's bills, which *Trustee represents* are approximately $19,627.76.

17. Matthew J. Gonsalves, *attorney for Trustee* will provide Manookian, with all of the descendant's outstanding bills, which are approximately $19,627.76.

18. The Trustee will provide Manookian with an accounting of all the bills and receipts for the funeral expenses of the decedent, which are approximately $37,000.

19. The Trustee is to provide notice o*f deposit of funds into the 529 account* fund or Federally Insured Blocked Account *for the benefit of E.S.M.* and copies of statements of

account, *not less frequently than quarterly of the Trust's 529 plan* fund or Federally Insured Blocked Account to Manookian.

**MUTUAL RELEASES**

20. Upon full performance of Paragraphs 11 through 16 above and in consideration for the performance of all terms and conditions of this Agreement, except as to such rights as may be created by this Agreement, the Parties, and each of them, on behalf of themselves and their past and present parents, subsidiaries, affiliates, officers, directors, agents, servants, professional corporations, employees, heirs, executors, representatives, investors, shareholders, attorneys, predecessors, successors, assigns, sureties, insurers, excess insurers, reinsurers, principals, managing members, trustees, beneficiaries, unit holders, limited and general partners, and all persons acting through or in concert with any of them, hereby generally release and forever discharge each other and their respective past and present parents, subsidiaries, affiliates, officers, directors, agents, servants, professional corporations, employees, heirs, executors, representatives, investors, shareholders, attorneys, predecessors, successors, assigns, sureties, insurers, excess insurers, reinsurers, principals, managing members, trustees, beneficiaries, unit holders, limited and general partners, and all persons acting through or in concert with any of them, if any, from any and all claims, losses, debts, liabilities, demands, obligations, rights, disputes, fees, controversies, costs, expenses, damages, actions and causes of action whatsoever, in law or equity, whether known or unknown, suspected or unsuspected, fixed or contingent, existing as of the date of this Agreement and accrued or hereafter accruing from any cause whatsoever, *including, but not limited to* , any and all

claims, demands and allegations, made, or which could have been made, arising out of or relating to the Creditor Claims (collectively, the "Released Claims").

**WAIVER OF UNKNOWN CLAIMS**

21. The Parties are aware that they may have claims of which they have no present knowledge or suspicion. Having taken into account such a possibility in entering into this Agreement, the mutual general release set forth in Section 18 of this Agreement shall constitute full and final release by the Parties of any unknown claim or claims and expressly waives any right or claim of right to assert hereafter that any claim has, through oversight or error, been omitted from the Creditor Claims. Accordingly, the Parties expressly waive any rights or benefits which they otherwise might have under California Civil Code Section 1542, and any other statutory or non-statutory law of any jurisdiction that is similar in wording, import, or effect to California Civil Code Section 1542. California Civil Code Section 1542 provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS TO WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

22. In connection with such waiver and relinquishment, the Parties acknowledge that they are aware that they or their attorneys, accountants, or agents may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the subject matter of this Agreement, but nonetheless, they intend hereby fully, finally, and forever to settle and release all matters being released herein, whether known or unknown, suspected or unsuspected, which now exist or may heretofore have existed. In furtherance of the intentions of the Parties, the mutual general release given in Section 18 of this Agreement by the Parties shall be and remain in effect as a full and complete mutual general release notwithstanding the discovery or existence of any

5

additional or different claims or facts or the failure of any consideration or promises between or among the Parties.

**LIMITATION ON RELEASE**

23. The Parties hereby expressly acknowledge that no Party to this Agreement is, by this Agreement, releasing any cause of action, claim, set-off, or defense that arises from the terms of this Agreement, or the breach of such terms.

**MUTUAL REPRESENTATIONS AND WARRANTIES**

24. Each party represents and warrants for the benefit of the other party as follows:

25. The Party has all necessary power and authority to execute, deliver, perform and comply with this Agreement;

26. The Party, or the Party's authorized agent, has duly authorized, executed, and delivered this Agreement to the other Party, and this Agreement constitutes a legal and binding agreement, enforceable against each Party in accord with the terms of this Agreement;

27. To the knowledge of the signatory on behalf of each Party, that Party's execution, delivery, performance of, and compliance with this Agreement does not violate or conflict with the terms of any agreement, instrument, order, judgment, or applicable law, statute, regulation, or rule to which the Party or any assets of the Party is bound and shall not require the Party to file or register with, or obtain any permit, authorization, consent, or approval of any governmental authority;

28. To the knowledge of the signatory on behalf of each Party, there is no action or proceeding, judicial or non-judicial, by which any third party, prior creditor, or claimant of the Party, or non-party seeks to restrain, prohibit, or invalidate the Party's execution, delivery, and/or performance of, and/or compliance with, this Agreement;

29. The Party is and has been represented by legal counsel of his or its choice, or has had the opportunity to be represented by legal counsel of his or its choice, throughout the negotiations and drafting that preceded the finalization and execution of this Agreement.

30. The Party (i) has carefully read and reviewed this Agreement; (ii) has had or has had the opportunity to have the provisions, and consequences thereof, fully explained by such Party's legal counsel; and (iii) is freely and voluntarily signing this Agreement;

31. Each Party is the sole owner of all rights and interest in the Released Claims, and has not assigned, transferred, or granted an interest or lien in, or purported to assign, transfer, or grant an interest or lien, in any of the Released Claims; and

32. Each Party and the signatory on their behalf have no actual knowledge or notice of any claim of assignment, transfer, or granting of an interest or lien in any of the Released Claims.

33. The above representations and warranties shall survive the execution and delivery of this Agreement.

**ENFORCING THE SETTLEMENT AGREEMENT**

34. This Court shall retain jurisdiction under California Code of Civil Procedure § 664.6 over the Parties to enforce this agreement until performance in full of all the terms of the agreement.

35. In the event that any of the Parties hereto brings any action or proceeding to enforce this Agreement or any provision thereof, the "prevailing party" (as determined by the court) in such action or proceeding will be entitled to recover from the other Party, reasonable attorneys' fees and costs, including court costs, expert witness fees, and other necessary costs, whether or not such action or proceeding is prosecuted to Judgment, as shall be fixed by the court.

36. It is agreed that a compliance date will be set by this Court for 60 days from the day this Court ratifies this Agreement.

37. It is agreed that the Court shall vacate the trial date/s.

38. This agreement shall be governed by and construed in accordance with the laws of the State of California.

39. Facsimile and/or electronic signatures shall be considered original signatures for the purposes of this Settlement Agreement.

**ATTORNEYS' FEES AND COSTS**

40. The Parties shall bear their own costs and attorneys' fees incurred relating to the Creditor Claims and this Agreement.  However, in the event that proceedings are implemented to enforce any provision of this Agreement, including, but not limited to, the mutual general release provided above by Section 18 of this Agreement, the Court or Arbitrator shall award the prevailing party its reasonable attorneys' fees and costs incurred in such enforcement efforts.

Dated: ~~February~~ March 7, 2016

By: _____
GAGIK MANOOKIAN, Individually
and in his capacity as Parent and
Natural Guardian of E.S.M., a Minor

Dated: ~~February~~ March 15, 2016

By: _____
NORMA GORDOA, Trustee of the Karine
Manookian Trust

The forgoing settlement agreement is approved as to form and content by the undersigned attorneys.

Dated: ~~February~~ March 7, 2016

LAW OFFICE OF DANIEL BORNSTEIN

8

By: _____
DANIEL BORNSTEIN
Counsel for Defendants
GAGIK MANOOKIAN, Individually
and in his capacity as Parent and
Natural Guardian of E.S.M., a Minor

Dated: February 29, 2016          LAW OFFICE OF MATTHEW J. GONSALVES

By: _____
MATTHEW J. GONSALVES
Counsel for Defendant
NORMA GORDOA, Trustee of the Karine
Manookian Trust

## ORDER

IT IS SO ORDERED, ADJUDGED AND DECREED.

Dated: March 24, 2016             _____
HON. CHARLES R. BRYER
UNITED STATES DISTRICT JUDGE